UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

AUBREY HALL,

     Plaintiff,

v.                                  Case No. 5:15cv27-WS-CJK

DAWSON, et al.,

     Defendants.

_____/

ORDER and
REPORT AND RECOMMENDATION

     This prisoner civil rights case is before the court on defendants Cobb, Dawson, and Stephens' Motion to Dismiss (doc. 36)[1] the second amended complaint (doc. 24). Defendant Edens also filed a Motion to Dismiss. (Doc. 46). Plaintiff responded in opposition to both motions. (Docs. 42, 48). The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After careful consideration of the parties' submissions and the relevant law, the undersigned recommends: (1) that defendants Cobb, Dawson, and Stephens' motion to dismiss be granted in part and denied in part; and (2) that defendant Edens' motion to dismiss be granted.

-------------------------

[1] The references to document and page numbers will be to those automatically generated by the CM/ECF system.

BACKGROUND

Plaintiff Aubrey Hall, proceeding *pro se* and *in forma pauperis*, initiated this action on February 15, 2015, by filing a civil rights complaint pursuant to 42 U.S.C. § 1983.  (Doc. 1).  At the time, plaintiff was an inmate of the Florida penal system confined at Santa Rosa Correctional Institution.  (Doc. 1, p. 2).  He has subsequently been released from custody.   (Doc. 47).   The second amended complaint, the operative pleading in this action, names five employees of Gulf Correctional Institution Annex ("GCIA") as defendants: Sergeant Dawson, Officer Cobb, Sergeant Kenneth Stephens, Officer Edens, and Officer Robert White.  (Doc. 24, p. 2).

The second amended complaint sets forth the factual allegations that follow. Plaintiff, a black male, was housed alone in a GCIA protective management ("PM") cell due to an inmate assault on February 8, 2011.  On March 1, 2011, Officer White wrote plaintiff a "false" disciplinary report ("DR") for disrespect.  Plaintiff contested the DR's allegations and, on March 3 or 4, White informed plaintiff "he was going to 'beat'" the DR based on a review of camera footage.   White "threatened to retaliate against plaintiff by having the other confinement officers write plaintiff more false DRs, spray plaintiff with chemical agents, and 'whatever else' [White] could 'think of' to make plaintiff 'pay' for being a 'smart ass nigger.'"  Between March 8 and 11, plaintiff was found not guilty of the DR.

"A week or less after" March 1, Sgt. Dawson performed a "PM" investigation to determine the reason for plaintiff's PM status.  Plaintiff provided Dawson with details of the February 8, 2011 assault.  "Shortly after" plaintiff was found not guilty of the March 1, 2011 DR, Dawson returned to plaintiff's cell and ordered him to sign a form consenting to be housed with a white inmate named Dale Delucenay.  Dawson did not "give plaintiff any explanation for this capricious cell change or for removing plaintiff from [his] house-alone status."  Plaintiff refused to sign the consent form, asserting "he was in fear of being victim to another [inmate] assault, and, therefore, wanted to remain housed alone for his personal safety."  Dawson threatened to spray plaintiff with chemical agents if he refused to sign the form.  Plaintiff, "out of fear, and under duress," signed the form.

Dawson placed Delucenay into plaintiff's cell.  Plaintiff, "on information and belief," asserts Dawson conducted Delucenay's PM investigation before he placed Delucenay and plaintiff in the same cell.  Later, Dawson returned to the cell "to review some of the facts of" Delucenay's PM investigation.  Plaintiff "believes" he heard Delucenay confirm an affiliation with the Aryan Nation, "an infamously known Neo-Nazi/white supremacist organization, known for their extreme hatred of and tendency to commit violent acts against black people."  After plaintiff discovered this, he became concerned for his safety.  He informed Dawson that Dawson failed to mention Delucenay's gang affiliation before ordering plaintiff to

sign the consent form or effecting the cell transfer.  Plaintiff advised Dawson about the concern for his safety and requested a cell transfer.  After Dawson told plaintiff he would not be moved, Dawson walked away from the cell.

After Dawson departed, Delucenay told plaintiff "he 'didn't want a black cellmate anyway,'" and "he was going to assault plaintiff to get [plaintiff] moved out of the cell."  Delucenay "assumed a fighting stance with his arms raised and fist clenched."  Plaintiff "began banging loudly on the cell door and yelling for defendant Dawson to hurry to" the cell.  When Dawson arrived, plaintiff informed him of Delucenay's actions and repeated the request for a cell transfer.  Dawson told plaintiff to "'to stop crying like a baby and learn how to fight like a man!'"  Dawson denied the request for a cell transfer and told plaintiff he would be sprayed with chemical agents if he called Dawson back to the cell.

Plaintiff "sought to live as amicably as possible with" Delucenay "as a means of protecting himself."  On March 21, 2011, Delucenay became angry after losing multiple card games to plaintiff.  Delucenay slammed the cards on the floor and began "yelling and cursing loudly."  Plaintiff told "Delucenay that he was behaving like a child over a meaningless game of cards."  When plaintiff turned to pick up the cards, Delucenay screamed "'you fucking nigger!' then grabbed plaintiff by his shirt, spun him around, and punched him painfully hard in the facial area with a closed fist."  Delucenay pushed plaintiff, causing him to slam his knees and shins into the

steel toilet bowl.  Plaintiff fell onto the concrete floor, landing "painfully hard on his back."  When plaintiff attempted to get up, Delucenay punched him in the face, causing the back of plaintiff's head to slam "into the sharp/jagged edge of a wall near the cell door."  Plaintiff sustained a cut to the back of his head, "suffered a concussion, and lost consciousness."   As plaintiff regained consciousness, Delucenay continued to punch plaintiff in the head and kick him in the torso.  While Delucenay was kicking plaintiff, Sergeant Stephens and Officer Cobb appeared at plaintiff's cell door.  "For what seemed about two to three minutes or longer" Stephens and Cobb "watched, laughed, and made taunting remarks at plaintiff" as Delucenay kicked plaintiff.  Stephens and Cobb then ordered Delucenay to stop kicking plaintiff but Delucenay refused to comply.  After Stephens and Cobb sprayed Delucenay in the face with chemical agents, he stopped kicking plaintiff.  As plaintiff rose from the floor, Stephens and Cobb sprayed him with chemical agents "without warning, cause, or reason."  Plaintiff suffered "temporary blindness, disorientation, uncontrollable tearing, painful burning sensations, . . .  chest pains, painful paroxysms of coughing and sneezing, uncontrollable salivation and nasal discharge—causing him to choke."

After plaintiff took a decontamination shower, Stephens threatened to spray plaintiff with chemical agents if he reported the foregoing events.  Medical personnel examined plaintiff's injuries and made a request to transfer him to GCIA's medical

building "to document and administer extensive treatment[.]"  Stephens, however, denied the requested transfer, "presumably to prevent plaintiff from reporting [the preceding] events."

After the incident, Delucenay was moved to a different cell with a white inmate.  Plaintiff remained in his current cell by himself.  Plaintiff was given a form to write a statement concerning the guards' use of chemical agents.  Due to Stephens' threat, plaintiff did not include a description of Stephens and Cobbs' actions during the incident.  Stephens subsequently wrote plaintiff a DR for fighting, which plaintiff claims was fabricated to subject plaintiff to punishment and conceal Stephens' excessive use of force.

On March 22, 2011, plaintiff was transferred to GCIA's medical building "due to experiencing/suffering even greater and unbearable pain from [the] assault/injuries."  While housed in a medical holding cell, a prison official took photographs of plaintiff's injuries.  As a result of plaintiff's head injuries, he began to experience "reoccurring dizziness/vertigo and chronic headaches so severe that plaintiff had to be examined repeatedly by medical personnel and receive several MRIs/CAT scans."

On March 23, 2011, Officer Edens served plaintiff with the DR for fighting. Edens told plaintiff his participation in the DR investigation would be futile because it was predetermined plaintiff would be found guilty of the DR.  Plaintiff ignored

Edens' comments and submitted a statement.  Edens "became irate and threatened to throw away plaintiff's . . . statement and to submit a false statement stating that plaintiff had refused to participate in [the] investigation."  Plaintiff's statement indicated "he was assaulted by, and not fighting with, Delucenay" and the DR was fabricated to conceal Stephens and Cobb's excessive use of force.

On March 29, 2011, plaintiff attended the disciplinary hearing and pleaded not guilty to the charge of fighting.  The hearing team informed plaintiff his written statement was not included with the DR materials but there was a statement by Edens indicating plaintiff refused to participate in the DR investigation.  Plaintiff was found guilty of the DR and sentenced to 30 days of disciplinary confinement.

After Edens took plaintiff's statement, Officer White came to plaintiff's cell and told him the assignment of Delucenay as plaintiff's cellmate, the use of chemical agents, and the issuance of the false disciplinary report were all retaliation for plaintiff "beating" the DR for disrespect.  "White walked away laughing."

Based on the foregoing, plaintiff asserts the following claims: (1) a First Amendment retaliation claim against White, Dawson, Stephens, Cobb, and Edens; (2) a Fourteenth Amendment "racial discrimination" claim against White; (3) an Eighth Amendment failure to protect claim against Dawson; (4) a state law negligent failure to protect claim against Dawson; (5) an Eighth Amendment failure to intervene claim against Stephens and Cobb; (6) an Eighth Amendment excessive

force claim against Stephens and Cobb; (7) a Fourth and Fourteenth Amendment "false charges/arrest" claim against Stephens; (8) a Fourth and Fourteenth Amendment false imprisonment claim against Stephens and Edens; (9) a Fourteenth Amendment procedural due process claim against Stephens and Edens; (10) a state law intentional infliction of emotional distress claim against White, Dawson, Stephens, Cobb, and Edens; and (11) a "supervisory liability" claim against Stephens and Dawson. As relief, plaintiff requests $750,000 in damages each from White, Dawson, Stephens, and Cobb, and $500,000 in damages from Edens.

## LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim, the court reads plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), accepts all factual allegations in the complaint as true, and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). There are a few exceptions to this rule, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice. 5B Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1357 (2008). Further, only well-pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff. *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.

1992); *Marrero v. City of Hialeah*, 625 F.2d 499, 502 (5th Cir. 1980);[2] *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). Mere "labels and conclusions" are not accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (explaining that conclusory allegations are not entitled to a presumption of truth).

As the Supreme Court reiterated in *Iqbal*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint or counterclaim must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id.* The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

speculative level," *Twombly*, 550 U.S. at 555, that is, "across the line from conceivable to plausible." *Id.* at 570.

## DISCUSSION

Preliminary Matters

After defendants Cobb, Dawson, and Stephens moved to dismiss the second amended complaint, plaintiff filed a "Motion for Leave to Partially Amend Second Amended Complaint." (Doc. 43). The Northern District of Florida's Local Rules, however, provide that "[a] pleading may be amended only by filing a complete copy of the amended pleading. Allegations in a prior pleading that are not set out in the amended pleading are deemed abandoned[.]" N.D. Fla. Loc. R. 15.1(A). Because plaintiff was attempting a "partial amendment" and did not file a complete copy of a third amended complaint, the motion will be denied.

Plaintiff also moved for an extension of time to file a response to defendant Edens' motion to dismiss. (Doc. 47). Plaintiff, however, filed the response before the court ruled on the motion. The court will consider plaintiff's response (doc. 48) in ruling on the motion to dismiss and deny the motion for extension of time (doc. 47) as moot.

Exhaustion

Title 42 U.S.C. § 1997e provides, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, whether they allege excessive force or some other wrong, and whether they seek only monetary damages.  *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).

Exhaustion of all available administrative remedies is a mandatory pre-condition to suit.  *Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001) ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained.") (emphasis added); *see also Porter*, 534 U.S. at 524-25 ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) (emphasis added).   "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

The grievance procedures promulgated by the Florida Department of Corrections require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010).

A failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. *See Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"). The court held that the defense of failure to exhaust should be treated as a matter in abatement. *Id*. at 1374. "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*quoting Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as

such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *Turner*, 541 F.3d at 1082. First, the court looks to the factual allegations in the defendants' motion and those in the plaintiff's response. *Id*. If they conflict, the court accepts the plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*.; *see also Bryant*, 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (*citing Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

Defendants assert "plaintiff failed to exhaust administrative remedies regarding all claims against Dawson and his claim that Stephens and Cobb retaliated or failed to intervene or protect." (Doc. 36, p. 5). Defendants also contend "there is

nothing in Plaintiff's grievances that would put FDC on notice of any misconduct by Dawson." (*Id.*, p. 7-8).

In response, plaintiff claims defendants "Cobb, Dawson, and Stephens told plaintiff that any grievances he submitted against them would be intercepted and/or destroyed." (Doc. 42, p. 1). Plaintiff asserts he submitted several informal grievances regarding his claims, but did not receive any responses from GCIA's staff within the 10-day time frame provided in the FDOC's regulations. *See* Fla. Admin. Code r. 33-103.005(4) ("The informal grievance shall be responded to within 10 days of the initial receipt date as noted on the informal grievance log."). Plaintiff contends the failure of staff to respond to his informal grievances obstructed him from filing formal grievances and completing the administrative remedy process. (*Id.*, p. 2).

While confined at Reception Medical Center ("RMC"), plaintiff filed an informal grievance on May 2, 2011, accusing a "Sgt. Lawson" of placing Delucenay into plaintiff's cell despite knowing Delecunay was a white supremacist and posed a threat to plaintiff. (Doc. 36-2, p. 16). On the top of the grievance, plaintiff twice wrote, "Forward to Warden at Gulf CI Annex." (*Id.*). The grievance indicates it was received at Gulf CI on May 12; the grievance was returned without action because plaintiff did not file the grievance "at the location where [he was] currently assigned in accordance" with Fla. Admin. Code r. 33-103.014(1)(j). *See* Fla. Admin.

Code r. 33-103.014(1)(j) (providing a grievance may be returned without processing when "[t]he inmate has not filed his grievance at the location he is presently assigned to as required in subsection 33-103.015(4), F.A.C.").[3]

On June 22, 2011, plaintiff filed a grievance appeal to the Secretary of the FDOC.  The grievance appeal stated:

> I have filed several grievances to the Warden and/or Asst. Warden at the RMC that were regarding incidents that happened at Gulf CI Annex that I attempted to have the RMC forward to Gulf Annex.  However, Gulf returned these grievances instructing me to re-submit these grievances to the institution I was at at the time – the RMC (for an expl. see the attached grievance which are (2) of the grievances I had re-wrote and re-submitted according to Gulf response of the attached). The allotted time for response by the Warden/Asst. Warden has transpired.  Relief: a response requiring the RMC to respond to said grievances.

(Doc. 36-2, p. 14).  Plaintiff attached the previously-described May 2, 2011 informal grievance to the appeal.  The FDOC's response informed plaintiff the appeal was being returned without action because it was not in compliance with the FDOC's

---

[3] Fla. Admin. Code r. 33-103.015(4) provides:

> All informal and formal grievances, except those administrative appeals filed directly with the Office of the Secretary, must be filed at the institution or facility to which the inmate is presently assigned. "Presently assigned" means the institution or facility in which the inmate is housed at the time he files either the informal or formal grievance. When either the informal or formal grievance complaint concerns an informal or formal grievance that occurred at another location, it shall remain the responsibility of the staff at the inmate's present location to handle the informal or formal grievance. The final resolution of the informal or formal grievance is the responsibility of the warden at the institution to which the inmate is presently assigned. Direct contact with outside staff may be necessary in resolving the informal or formal grievance.

rules.  (*Id.*, p. 13).  The response indicated plaintiff did not "first submit [his] appeal at the appropriate level at the institution" or he did not provide the Secretary's "office with a copy of that appeal, nor [did he provide] a valid or acceptable reason for not following the rules."  (*Id.*).

Based on the record before the court, the undersigned cannot conclude plaintiff failed to exhaust his administrative remedies with respect to the claims against Dawson.  The June 22, 2011 grievance appeal suggests plaintiff rewrote the informal grievance concerning "Sgt. Lawson's" actions and submitted it at the RMC.[4]  (Doc. 36-2, p. 14); *see also* (doc. 42, p. 3) ("Plaintiff resubmitted said grievances . . . at the RMC but received no response within said timeframe.").  The grievance appeal also appears to offer a valid reason for failing to attach a formal grievance response to the appeal—the "warden/asst. warden" failed to respond to the grievances within the time allotted by the rules.  *See* Fla. Admin Code r. 33-103.011(4) ("The time limit for responding to grievances and appeals may be extended for a reasonable period agreeable to both parties if the extension is agreed to in writing by the inmate.  Unless the grievant has agreed in writing to an extension, expiration of a time limit at any step in the process shall entitle the complainant to

---

[4] Defendants provided the court with all the grievance appeals plaintiff filed between March 1, 2011, and October 1, 2011.  (Doc. 36-2, p. 1).  Without evidence concerning the relevant informal or formal grievances, however, it cannot be confirmed whether plaintiff rewrote the May 2, 2011 grievance concerning "Sgt. Lawson's" actions after the grievance was returned without action from Gulf CI.

proceed to the next step of the grievance process.  If this occurs, the complainant must clearly indicate this fact when filing at the next step.").  Thus, Dawson has not carried his burden of showing plaintiff failed to exhaust the grievance process and that portion of the motion to dismiss should be denied without prejudice.

Defendants Stephens and Cobb argue plaintiff failed to exhaust the administrative remedy process concerning the claims that Stephens and Cobb: (1) retaliated against plaintiff; and (2) failed to stop the fight between plaintiff and Delucenay.  (Doc. 36, p. 8).  Although plaintiff exhausted the claim that Stephens and Cobb used excessive force by spraying plaintiff with chemical agents (doc. 36-1, p. 3-5), none of plaintiff's grievances mention that Stephens and Cobb failed to intervene during the fight between Delucenay and plaintiff.  The separate Eighth Amendment failure to inteveve claim against Stephens and Cobb, therefore, should be dismissed.

In addition, plaintiff's grievances do not indicate that Stephens and Cobb's actions were retaliatory or motivated by plaintiff "beating" the DR for disrespect. Because plaintiff never claimed Stephens and Cobb retaliated against him in the grievances, the First Amendment claim against Stephens and Cobb should be dismissed.  *See Martinez v. Minnis*, 257 F. App'x 261, 265 n.5 (11th Cir. 2007) (finding prisoner who filed grievance concerning placement in special housing unit failed to exhaust retaliation claim because grievance "did not mention retaliation or

use any words synonymous with or indicating retaliation, nor did it provide the BOP

with notice of allegedly retaliatory action or the opportunity to correct it").

Retaliation

"The First Amendment forbids prison officials from retaliating against

prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235,

1248 (11th Cir. 2003) (*citing Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir.

1989)).  An inmate is considered to be exercising his First Amendment speech rights

when he files lawsuits concerning the conditions of his confinement.  *Wright v.*

*Newsome*, 795 F.2d 964, 968 (11th Cir. 1986).  To prevail on a First Amendment

retaliation claim, a plaintiff must establish: "(1) his speech was constitutionally

protected; (2) the inmate suffered adverse action such that the administrator's

allegedly retaliatory conduct would likely deter a person of ordinary firmness from

engaging in such speech; and (3) there is a causal relationship between the retaliatory

action and the protected speech."  *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir.

2008).   "The causal connection inquiry asks whether the defendants were

subjectively motivated to discipline because [the inmate] complained of some of the

conditions of his confinement."  *Id.* at 1278 (*citing Thaddeus-X v. Blatter*, 175 F.3d

378, 399 (6th Cir. 1999)).

In addition to the exhaustion defense, defendant Cobb asserts that, as to him,

plaintiff cannot state a First Amendment retaliation claim.  (Doc. 36, p. 8-10).

Plaintiff claims Cobb sprayed him with chemical agents in retaliation for "beating" the DR for disrespect written by White.  Plaintiff argues the causal connection between the two events is demonstrated by (1) White's threats; and (2) White's statement that the use of force was made in accordance with the threats.  (Doc. 42, p. 5).  The complaint, however, does not allege Cobb was aware that plaintiff "beat" the DR for disrespect.  *See Farrow*, 320 F.3d at 1248-49 (affirming grant of summary judgment on retaliation claim when alleged retaliator attested in affidavit that she had no knowledge of an inmate's protected speech).  Nor does the amended complaint contain any direct factual allegations indicating White ordered Cobb to spray plaintiff with chemical agents.  White's statements concerning the use of force are insufficient to nudge a retaliation claim against Cobb "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  The First Amendment claim against Cobb, therefore, should be dismissed because plaintiff failed to establish a causal connection between Cobb's use of force and the dismissal of the DR for disrespect.

Supervisory Liability

The complaint attempts to raise a "supervisory liability" claim against defendants Stephens and Dawson.  (Doc. 24, p. 22).  "[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360

(11th Cir.2003) (internal quotation marks omitted). "Instead, to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1047-48 (11th Cir. 2014).

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Cottone*, 326 F.3d at 1360 (internal quotation marks omitted) (citations omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks omitted). The factual allegations of the complaint must plausibly show that the supervisory official acted with the same mental state required to establish a constitutional claim against the subordinate. *Franklin v. Curry*, 738 F.3d 1246, 1249 (11th Cir. 2013) (holding that to state a claim under § 1983 against a supervisor for the violation of the plaintiff's constitutional rights, the court must first identify the precise constitutional violation charged, *e.g.*,

deliberate indifference, and then determine whether the complaint alleges the required elements against the supervisor).

Plaintiff appears to be confused about the nature of supervisory liability. A claim based on a theory of "supervisory liability" is not an indpendent cause of action divorced from an underlying constitutional violation. Plaintiff, however, is attempting to raise a stand-alone "supervisory liability" claim against Stephens and Dawson in addition to various constitutional claims against the defendants. Plaintiff's "supervisory liability" claims, therefore, are superfluous and should be dismissed.

<u>Intentional Infliction of Emotional Distress</u>

Plaintiff attempts to raise a claim under Florida law for intentional infliction of emotional distress ("IIED"). "To prove intentional infliction of emotional distress under Florida law, the plaintiff must prove: (1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe." *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990) (*citing Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985)). "Only in extremely rare circumstances will courts uphold claims for intentional infliction of emotional distress." *Gonzales-Gonzales-Jimenez de Ruiz v. United States*, 231 F. Supp. 2d 1187, 1199 (M.D. Fla. 2002). "It has not been enough that the defendant has acted with an intent which is tortious or

even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *McCarson*, 467 So. 2d at 278-79 (*quoting* Restatement (Second) of Torts § 46 (1965)).

Defendants Cobb, Dawson, Stephens, and Edens argue (1) their alleged actions are not so outrageous as to sustain a claim for IIED; and (2) plaintiff failed to allege he suffered any emotional distress as a result of the defendants' conduct. Based on the allegations in the second amended complaint, plaintiff has failed to state a claim for IIED against any defendant.  None of the defendants' alleged actions reach a level to sustain a claim for IIED. *See Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) (finding passenger on cruise ship alleging she was grabbed, kicked, punched, thrown to the ground, handcuffed, drug across the floor, and confined in her cabin overnight stated a claim for assault and battery, but failed to state a claim for IIED).

In addition, although the second amended complaint describes plaintiff's physical injuries, it does not allege plaintiff suffered any emotional distress as a result of the defendants' actions. Because the complaint does not allege plaintiff suffered severe emotional distress, he cannot establish the fourth element of an IIED claim and the claim should be dismissed.

False Imprisonment

False imprisonment in Florida is defined as "'the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty.'" *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1116 (11th Cir. 2006) (*quoting Escambia Cty. Sch. Bd. v. Bragg*, 680 So. 2d 571, 572 (Fla. 1st DCA 1996)). Plaintiff attempts to bring a false imprisonment claim against defendant Stephens and Edens based on the disciplinary confinement he was subjected to after being found guilty of the DR for fighting. Because plaintiff was found guilty of the DR (and that finding has not been overturned), his placement in disciplinary confinement was "lawful" and he cannot maintain a claim for false imprisonment. *See Harder v. Edwards*, 174 So. 3d 524, 532 (Fla. 4th DCA 2015) ("The general rule is that arrest and imprisonment, if based upon a facially valid process, cannot be false.").

Negligence

  Section 768.28(9)(a), Florida Statutes, provides:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Based on § 768.28(9)(a), defendant Dawson argues the claim that he negligently failed to protect plaintiff must be dismissed. In response, plaintiff argues the complaint alleges Dawson "knowingly/deliberately participated in the retaliatory act of exposing plaintiff to an inmate assault." (Doc. 42, p. 7). Nevertheless, plaintiff's claim here sounds in negligence, and he cannot have it both ways, at least for the state law cause of action. Nothing in this report and recommendation prohibits plaintiff from pursuing his Eight Amendment failure to protect claim. Because plaintiff cannot recover damages from Dawson based on negligence, however, the state law negligence claim should be dismissed. *See Ondrey Patterson*, 884 So. 2d 50, 54 (Fla. 2d DCA 2004) ("an employee's conduct must be something greater than gross negligence in order to be actionable under section 768.28(9)(a)").

Procedural Due Process

  To state a due process claim, an inmate must allege a deprivation that "imposes atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).  "[D]iscipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486.

Plaintiff claims Edens' refusal to submit plaintiff's statement to the disciplinary hearing team violated his rights under the Fourteenth Amendment. Edens claims plaintiff cannot state a procedural due process claim "because he does not have a liberty interest in the disciplinary proceeding." (Doc. 46, p. 6).  Because the disciplinary hearing that plaintiff claims was tainted by Edens' actions resulted only in the imposition of disciplinary confinement, plaintiff did not have a protected liberty interest in the proceeding and he cannot state a due process claim against Edens.  *See Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998) (holding inmate did not show he "was deprived of a constitutionally protected liberty interest as defined in *Sandin*" where he did not lose gain time and was held in confinement for approximately 2 months).

Compensatory and Punitive Damages

Plaintiff seeks $500,000 in damages from defendant Edens.  Plaintiff, however, cannot recover compensatory or punitive damages from Edens because plaintiff did not suffer a physical injury as a result of Edens' submission of the supposedly false statement to the disciplinary hearing team.  Under the Prison

Litigation Reform Act, inmates are not allowed to recover monetary damages without first showing a physical injury or the commission of a sexual act. 42 U.S.C. § 1997e(e). "Under the statute and [Eleventh Circuit] caselaw, an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury." *Brooks v. Powell*, 800 F.3d 1295, 1307 (11th Cir. 2015); *see also Al-Amin v. Smith*, 637 F.3d 1192, 1199 (11th Cir. 2011) (PLRA precludes the recovery of punitive damages in the absence of physical injury); *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000) ("compensatory damages under § 1983 may be awarded only based on *actual injuries* caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated"). Because plaintiff does not allege he suffered any physical injury as a result of Edens' actions, his claims for compensatory and punitive damages against Edens should be dismissed.

Accordingly, it is ORDERED:

1.     The clerk shall update the docket to reflect the correct name of defendant Edwins is John Wesley Edens.

2.     Plaintiff's "Motion for Leave to Partially Amend Second Amended Complaint" (doc. 43) is DENIED.

3.     Plaintiff's Motion for Extension of Time (doc. 47) is DENIED AS MOOT.

And it is respectfully RECOMMENDED:

1.     That defendants Cobb, Dawson, and Stephens' Motion to Dismiss (doc. 36) be GRANTED IN PART and DENIED IN PART.  The following claims should be DISMISSED:

      a.     plaintiff's Eighth Amendment failure to intervene claim against Cobb and Stephens;

      b.     plaintiff's First Amendment retaliation claim against Stephens and Cobb;

      c.     plaintiff's "supervisory liability" claim against Dawson and Stephens;

      d.     plaintiff's intentional infliction of emotional distress claim against Cobb, Dawson, and Stephens;

      e.     plaintiff's false imprisonment claim against Stephens;

      f.     plaintiff's negligence claim against Dawson.

2.     That defendant Edens' Motion to Dismiss (doc. 46) be GRANTED and the following claims DISMISSED against Edens:

      a.     plaintiff's procedural due process claim;

      b.     plaintiff's intentional infliction of emotional distress claim;

  c.  plaintiff's false imprisonment claim;

  d.  plaintiff's claims for compensatory and punitive damages.

 3.  That this matter be referred to the undersigned for further proceedings on:

  a.  plaintiff's First Amendment retaliation claim against White, Dawson, and Edens;

  b.  plaintiff's racial discrimination claim against White;

  c.  plaintiff's Eighth Amendment failure to protect claim against Dawson;

  d.  plaintiff's Eighth Amendment excessive force claim against Stephens and Cobb;

  e.  plaintiff's Fourth and Fourteenth Amendment false arrest claim against Stephens;

  f.  plaintiff's Fourteenth Amendment procedural due process claim against Stephens.

 At Pensacola, Florida, this 1st day of September, 2016.


*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.